IN RE HUNTER v. NEWSOM

[121 N.C. App. 564 (1996)]

IN THE MATTER OF ROBERT N. HUNTER, JR., Administrator CTA DBN of the Estate of FLORENCE SHARP NEWSOM, deceased, Plaintiff v. ROBERT WESLEY NEWSOM, III, Individually, and in his capacity as the former Executor of the Estate of FLORENCE SHARP NEWSOM, deceased; J. THOMAS KEEVER, JR., Substitute Trustee under a Deed of Trust recorded in Deed of Trust Book 3889, Page 1763; BANKERS TRUST OF NORTH CAROLINA, Noteholder and Beneficiary under a Deed of Trust recorded in Deed of Trust Book 3889, Page 1763; J. PATRICK ADAMS, Substitute Trustee u/w/o FLORENCE SHARP NEWSOM, deceased; PAIGE NEWSOM, BRITT BLACKWELL NEWSOM and ROBERT WESLEY NEWSOM, IV, Minors, by and through their Guardian Ad Litem; and the Unborn and Unknown Heirs of Robert Wesley Newsom, III, by their Guardian Ad Litem, Defendants

No. COA94-794

(Filed 20 February 1996)

**Infants or Minors § 27 (NCI4th)— settlement agreement to terminate trust—remainder interests of unborn heirs unfairly affected—authority of court to reject settlement agreement**

Having determined that Bankers Trust was a creditor of testatrix's son individually and not a creditor of testatrix's estate, the trial court committed no error or abuse of discretion in determining that a proposed settlement agreement, which acknowledged Bankers Trust as a creditor of the estate and distributed the remainder interests in the trust, would be unfair to the remainder interests of the unborn and unknown heirs of testatrix's son, declining to approve the settlement agreement, and ordering that testator's estate be administered according to her intent as expressed in her will.

**Am Jur 2d, Infants § 153.**

Appeal by defendant Bankers Trust of North Carolina from order and declaratory judgment entered 1 March 1994 by Judge Melzer A. Morgan, Jr., in Guilford County Superior Court. Heard in the Court of Appeals 18 April 1995.

*Patton Boggs, L.L.P., by Robert N. Hunter, Jr., for plaintiff-appellee Robert N. Hunter, Jr., Administrator CTA DBN of the Estate of Florence Sharp Newsom.*

*Adams Kleemeier Hagan Hannah & Fouts, L.L.P., by M. Jay DeVaney, Michael H. Godwin and James W. Bryan, for defendant-appellant Bankers Trust.*

**IN RE HUNTER v. NEWSOM**

[121 N.C. App. 564 (1996)]

*McNairy, Clifford & Clendenin, by R. Walton McNairy, for defendant-appellee guardian ad litem for the unborn and unknown heirs of Robert Wesley Newsom, III.*

*Lucas & Keever, by J. Thomas Keever, Jr., for defendant-appellee J. Thomas Keever, Jr., substitute trustee.*

*Adams & Osteen, by J. Patrick Adams, for defendant-appellee J. Patrick Adams, substitute trustee.*

*Alexander Ralston Speckhard & Speckhard, P.A., by Stanley E. Speckhard, for defendant-appellee guardian ad litem for Britt Blackwell Newsom and Robert Wesley Newsom, IV.*

MARTIN, John C., Judge.

Plaintiff Robert Hunter, Jr., Administrator CTA DBN of the Estate of Florence Sharp Newsom, filed a complaint for a declaratory judgment and to compel distribution of assets of a trust created by Florence Newsom's will and termination of the trust due to impossibility of performance. The complaint alleged the following: Florence Newsom died testate on 28 May 1985. In accordance with the provisions of her will, her son Robert Wesley Newsom, III ("Newsom"), and Thomas P. Ravenel qualified as co-executors of her estate. The estate was valued at $191,607.32, consisting of personal property valued at $84,044.12, real property (hereinafter referred to as the "Fairgreen Road property") valued at $100,580.00, and stock valued at $6,983.20. Florence Newsom's will provided for her residuary estate, after the payment of specific bequests, to be placed in trust, with the income therefrom to be paid to Newsom for his life, and at his death, to be distributed, in equal shares, to his surviving children.

Thomas Ravenel resigned as a co-executor on 5 September 1990 due to ill health; plaintiff alleged that sometime after Ravenel's resignation, Newsom, who had continued to serve as sole executor of his mother's estate, misappropriated the assets of the estate and otherwise failed to perform his fiduciary duties. Newsom was removed by the Clerk for cause on 5 June 1992, and plaintiff was appointed as administrator CTA DBN.

Plaintiff also alleged that Newsom, prior to his removal, borrowed the sum of $140,000.00 from defendant Bankers Trust of North Carolina ("Bankers Trust"). The loan was evidenced by a promissory note executed by Newsom "individually and as Executor" of Florence Newsom's estate and secured by a Deed of Trust conveying the

IN RE HUNTER v. NEWSOM

[121 N.C. App. 564 (1996)]

Fairgreen Road property as collateral. Plaintiff alleged that Newsom misappropriated the loan proceeds to his own use and benefit rather than for the benefit of Florence Newsom's estate or the trust created by her will. Newsom subsequently defaulted on repayment of the loan.

As a result of Newsom's default, plaintiff sold the Fairgreen Road property, through a special proceeding to create assets for payment of debts of the estate, for an amount insufficient to pay the debts and costs of administration of the estate and satisfy the debt to Bankers Trust. Plaintiff alleged that he had entered into a conditional agreement, subject to the approval of the court, with Bankers Trust, the trustee of the trust created under Florence Newsom's will, and the guardian *ad litem* for the minor beneficiaries of the trust, to terminate the trust and distribute the proceeds of the sale of the Fairgreen Road property, together with the other assets of the estate, as follows: (1) to pay the costs of the action; (2) to pay the costs of administration and the debts of Florence Newsom's estate; (3) to pay Bankers Trust an amount equal to the life interest share of Newsom in the trust created under Florence Newsom's will according to Internal Revenue Service mortuary tables; and (4) to pay the three then living children of Newsom an amount equal to their remainder interest shares in the trust. Plaintiff sought an order declaring the proposed division to be in the best interests of the minor beneficiaries, directing him to proceed in accordance with the conditional agreement, and, upon such distribution of the assets of the estate, terminating the trust created by Florence Newsom's will.

All of the parties either answered and joined in plaintiff's prayer for relief or were declared to be in default. Prior to ruling on the matter, however, the trial court properly appointed a guardian *ad litem* for the unborn children of Newsom. The guardian *ad litem* for the unborn children of Newsom filed an answer (1) denying that the debt to Bankers Trust was a valid debt of the estate, (2) asserting that Newsom had forfeited his right to lifetime income from the trust, and (3) requiring that all funds held by plaintiff as administrator of Florence Newsom's estate be paid to the trustee of the trust created by her will to be administered for the benefit of the remaindermen and distributed to them upon the death of Newsom.

The trial court found the facts to be essentially as alleged by plaintiff. The court concluded that Newsom was not authorized as executor of his mother's estate to borrow the money from Bankers

Trust and such debt was his individual debt and not a debt of the estate. The court further found and concluded that Bankers Trust did not have a valid lien upon the Fairgreen Road property and was not entitled to recover any assets of the estate. Thus, the trial court concluded that the settlement proposed by plaintiff would not be fair to the unborn and unknown heirs of Newsom and should not be approved. The trial court directed that the assets of Florence Newsom's estate, including the proceeds from the sale of the Fairgreen Road property, be distributed: (1) to pay the costs of the action; (2) to pay the debts, claims and costs of the administration of the estate according to Chapter 28A of the North Carolina General Statutes; and (3) the remaining balance to the trustee of the trust created under the will of Florence Newsom to be administered pursuant to the terms of the trust. Bankers Trust appeals.

---

Initially, Bankers Trust asserts that plaintiff administrator's decision to compromise and settle the claim of Bankers Trust against the estate of Florence Newsom was "conclusive" absent fraud, bad faith or gross negligence. Thus, Bankers Trust argues, the trial court had no authority, in the absence of such a finding, to disapprove the settlement proposed by plaintiff administrator. The argument is untenable.

We have no doubt that the agreement proposed by plaintiff administrator in this case was the product of a well-intentioned effort to avoid depletion of Florence Newsom's estate through protracted and expensive litigation. Ordinarily, a personal representative has the authority, in accomplishing the expeditious settlement of a decedent's estate, to settle and compromise claims in favor of or against the estate, provided that he acts honestly, reasonably and prudently. N.C. Gen. Stat. § 28A-13-3(a)(15) (1995); *see* Wiggins, *Wills and Administration of Estates in North Carolina* § 243 (2d Ed. 1983). In the present case, however, the parties expressly conditioned their settlement agreement upon approval of its terms by the court.

By its terms, the agreement would have resulted in the termination of the trust created for the benefit of the children of Newsom who were living at the time of his death. At the time this action was commenced, two of the children were minors. Moreover, because the life beneficiary of the trust is still living, the possibility exists that the class of remainder beneficiaries would include, upon his death, persons not yet in being whose rights would have been extinguished by the settlement agreement.

The courts of this State in their equity jurisdiction have inherent authority over the property of infants and will exercise this jurisdiction whenever necessary to preserve and protect children's estates and interests. The court looks closely into contracts or settlements materially affecting the rights of infants . . . .

*Sternberger v. Tannenbaum*, 273 N.C. 658, 674, 161 S.E.2d 116, 128 (1968) (citations omitted). There can be no question in North Carolina that a court of equity has the power to approve an agreement affecting the rights of infants and unborn beneficiaries in trust funds. *See Id.; Reynolds v. Reynolds*, 208 N.C. 578, 182 S.E. 341 (1935). The power of the court to approve such settlements must necessarily imply also the reciprocal power not to approve where it is made to appear to the court that the rights and interests of minor or unborn beneficiaries are not protected.

Bankers Trust argues, however, that the only issue for the court, in determining whether to approve the settlement, was whether the administrator acted in good faith in recognizing the loan as a debt of the estate and in entering into the settlement agreement providing for termination of the trust. By implication, it argues that the question of the validity of the debt was for determination by the administrator and, in the absence of evidence of his bad faith, was not subject to review by the court. We disagree.

The administrator alleged, in his complaint for declaratory judgment, that Newsom borrowed the funds from Bankers Trust in his individual capacity and as executor of his mother's estate, and used the funds for his own benefit, rather than the benefit of the estate. The administrator sought from the court "an order declaring the rights of the parties." In the answer filed by the guardian *ad litem* for the unknown and unborn heirs, he specifically denied that the note executed by Newsom to Bankers Trust was a debt of Florence Newsom's estate. Thus, the issue was joined as to the validity of the debt as an obligation of the estate, and the court was required to resolve the issue to determine the validity of the underlying basis for the settlement agreement for which the administrator sought approval. *See Pittman v. Barker*, 117 N.C. App. 580, 452 S.E.2d 326, *disc. review denied*, 340 N.C. 261, 456 S.E.2d 833 (1995) (in non-jury trial, trial court must resolve all issues raised by the pleadings).

Bankers Trust argues generally, in support of several assignments of error directed to the trial court's findings and conclusions with respect to the loan, that Newsom, as executor of his mother's estate,

was given authority to borrow funds and, therefore, the trial court erred in its determination that the loan was not a debt of the estate. G.S. § 28A-13-3(a)(12) permits an executor to "borrow money . . . upon such . . . security as the personal representative shall deem advisable, . . . for the purpose of paying debts, taxes, and other claims against the estate, and to mortgage, pledge or otherwise encumber such portion of the estate as may be required to secure such loan or loans." Similarly, under G.S. § 28A-15-1(c), the executor is permitted, upon his determination that it is in the best interest of the administration of the estate, "to sell, lease, or mortgage any real estate or interest therein to obtain money for the payment of debts and other claims against the decedent's estate . . . ." Additionally, among the powers which Florence Newsom granted her executors by incorporation of the provisions of G.S. § 32-27, is the power to borrow money for the purpose of managing the real property of the estate or paying debts, taxes or other charges against the estate. The burden, however, is upon the parties asserting the validity of the debt as an obligation of the estate to show that Newsom acted within his authority as executor. *See Rubber Co. v. Distributors*, 253 N.C. 459, 117 S.E.2d 479 (1960) (the burden of proof on an issue ordinarily rests upon the party who asserts the affirmative thereof).

Except for the recitation on the promissory note that Newsom had signed it "individually and as Executor" of his mother's estate and the unsworn statement from plaintiff administrator to the court that "some of the funds were probably used for repair and renovation of the Fairgreen Road property", there is simply no evidence from which the trial court could determine the intended purpose for which Newsom borrowed the money. Thus, we are constrained to agree with the trial court "that for whatever purpose of the loan, it was not for the purposes of paying debts, taxes or other charges against the estate, there being no such known charges", or for the management of the real property as authorized by G.S. § 32-27.

We also find no merit in the argument by Bankers Trust that other language in Florence Newsom's will gave Newsom "full authority to bind the Estate in a vast number of areas." The language to which Bankers Trust refers is the following:

> I hereby grant to my Executor . . . continuing absolute, discretionary power to deal with any property, real or personal, held in my estate . . ., as freely as I might in the handling of my own affairs. Such power may be exercised independently and without

prior or subsequent approval of any court or judicial authority and no person dealing with the Executor . . . shall be required to inquire into the propriety of any of . . . [his] actions.

Contrary to Bankers Trust's assertion, we do not read this language as extending any additional authority or power to the executor and cannot be interpreted to authorize any act which is not otherwise authorized. Thus, we find no error in the trial court's determination that the Bankers Trust debt was not a debt of Florence Newsom's estate.

Having determined that Bankers Trust was not a creditor of Florence Newsom's estate, the trial court committed no error or abuse of discretion in determining that the settlement agreement would be unfair to the remainder interests of the unborn and unknown heirs of Newsom, declining to approve the settlement agreement, and ordering that Florence Newsom's estate be administered according to her intent as expressed in her will. The judgment of the trial court is affirmed.

Affirmed.

Judges EAGLES and GREENE concur.